# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.    )
GEORGE GUIRSCH,    )
    )
          Petitioner,    )    Case No.  05 C 2696
      v.    )
    )    Judge Virginia M. Kendall
DEIRDRE BATTAGLIA, Warden, Stateville    )
Correctional Center    )
    )
          Respondent.    )

## MEMORANDUM OPINION AND ORDER

A Cook County jury found Petitioner George Guirsch ("Petitioner" or "Guirsch") guilty of three counts of attempted first-degree murder, aggravated battery with a firearm, aggravated battery causing great bodily harm and armed violence. The charges stemmed from an incident where Guirsch fired his gun at four City of Chicago police officers, resulting in one of the officers being paralyzed from the neck down. Upon remand from the Illinois Appellate Court for resentencing, the trial court imposed two consecutive fifty-year terms of imprisonment. Petitioner appealed and the Appellate Court affirmed his conviction and new sentence. The Illinois Supreme Court denied Guirsch's Petition for Leave to Appeal ("PLA"). Guirsch did not seek relief through a state petition for post-conviction relief. Petitioner now has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 wherein he asserts that his federal rights were violated when: (1) the trial court did not instruct the jury on the affirmative defenses of self-defense and defense of dwelling; (2) the trial court did not instruct the jury on the offense of attempted second degree murder; (3) the State used evidence of other crimes and bad character, and the State's witness lied on the stand; and (4) the trial court sentenced him (I) to an enhancement that applies only if the victim is killed, (ii) to consecutive

terms based upon facts not proved to a jury beyond a reasonable doubt and (iii) to an increased term using the elements of the crime. Petitioner also contends that the trial court's cumulative errors violated his federal rights.

The State argues initially that Guirsch's petition is untimely and should be dismissed based on the one-year limitation period in 28 U.S.C. § 2244(d)(1) because he did not submit a signed petition before the period expired. The Rules Governing § 2254 Cases, however, require a clerk to accept a filing even though it lacks a signature. Guirsch's unsigned petition therefore stopped the running of the statute of limitations and his later-filed, signed petition related back to date of the timely, unsigned petition. As to the merits of Guirsch's petition, the state court's decision not to instruct the jury on self-defense or defense of dwelling did not violate Guirsch's due process rights because it is not more likely than not that a reasonable jury would have found in his favor on the defenses. With regard to Petitioner's second claim, the State of Illinois' second degree murder statute is not unconstitutional and the Court gives deference to the Illinois statutory scheme that punishes defendants differently; and because Petitioner cannot show that a jury would have more likely than not found him guilty of attempted second degree murder instead of attempted first degree murder, he is not entitled to habeas relief. Finally, Guirsch has not established that the state court's evidentiary rulings or sentencing of him violated his rights under the Constitution or laws of the United States.

### Statement of Facts

Guirsch does not challenge the facts as found by the Illinois Appellate Court, thus, this Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.2d 426, 434 (7th Cir. 2007). George Guirsch was 61 years old at the time

of the shooting. Guirsch lived alone in an apartment at 1404 West Estes in Chicago, Illinois and worked as a security guard at a local bank. On the night of October 16, 1996 at approximately 7:30 p.m., Ronald Satchell was walking near Guirsch's apartment building when he saw two shots fired from a gun in a second floor window. Shortly after 9:00 p.m., Satchell's fiancé told him that she heard more gunshots and saw police outside. Satchell went outside and told the police what he had witnessed earlier. Michelle Terrell testified that she heard gunshots around 9:00 p.m. and called 911 anonymously to report them. Guirsch testified that he did not fire the shots and Guirsch and an investigator from the Cook County Public Defender's Office testified that the window identified by Satchell did not open fully.

At around 9:00 p.m., four Chicago police officers knocked on Guirsch's door based on information from Terrell that she had seen Guirsch with a gun. Guirsch was licensed by the State of Illinois to carry a gun in connection with his job as a bank security guard. Three of the officers wore plain clothes, the fourth officer testified that he was wearing his sergeant's uniform. According to the officers' testimony, the plain clothes officers each wore jeans, a plaid shirt, a black bullet-proof vest with a police radio in the pocket and a gun belt which held a holstered gun, an extra magazine for the gun and handcuffs. Two of the plain clothes officers wore their badges, a gold police star, on the front of their gun belts, while the third plain clothes officer pinned his badge to the upper left front of his bullet-proof vest. The uniformed officer displayed his badge and name plate on the front of a white bullet-proof vest. One or two of the officers may have had their weapons unholstered as they waited outside Guirsch's apartment. The police officers testified that they announced "police, police, open the door" and "police, come to the door" as they knocked. Two other witnesses testified that they heard the police officers announcing themselves. Guirsch

testified that he never heard the police announce themselves. Philip Davis and his wife, who lived in the building next door, testified that they heard the loud knocking, but did not hear any voices during the knocking.

Guirsch, awakened by the loud knocking on his apartment door, grabbed his gun and walked into the front room of his apartment. Guirsch opened his apartment door with his gun pointed at the officers. None of the officers verbally identified themselves or told Guirsch to drop his weapon at this point. Although he testified that the area outside his door did not have an adequate light source, Guirsch said he could see that the figures were white males wearing plaid shirts and dark vests. Guirsch testified at trial that he was frightened and concerned about what these individuals were up to. The officers immediately ran for cover when Guirsch pointed the gun at them. Guirsch fired two shots at the figures as they "were running away from [him]," one of the shots striking Officer Mullen in his cheek. Guirsch then stepped back inside his apartment. Officer Mullen lay face down on the floor. Guirsch emerged again from his apartment pointing the gun. Officer Brannigan yelled "police" and when Guirsch did not lower his gun, the officer fired his weapon at Guirsch. Guirsch retreated into his apartment before coming out with his hands in the air, stating "I'm sorry, I give up." The officers ordered Guirsch to lay flat on the ground. The officers testified that Guirsch did not cooperate and that they had to forcibly handcuff him, but no officer struck him. Defendant testified that the officers kicked him in the back, broke his glasses and punched him in the back of the head. Ann Whelan testified that she saw a uniformed officer kick Guirsch in the stomach and another officer slap him. The bullet that struck Officer Mullen traveled through his creek and lodged in his upper vertebrae, causing permanent paralysis from the neck down.

Guirsch was taken to Area 3 police headquarters and placed in an interview room. Guirsch

remained in the room until he signed a written statement at 1:30 p.m. the next day. In his statement, Guirsch said that he heard the word "police" and the static from radios while he walked through his front room towards the door. Guirsch stated that he did not make any attempts to identify the individuals outside of his door – by speaking to them or looking out the peephole or adjacent window – before opening the door with his gun in hand. When he opened the door, Guirsch saw three figures scatter and he fired two shots at the center person because he was the "more readily available target." Immediately following the shooting, a Chicago police detective recovered Guirsch's handgun from the apartment along with Guirsch's gun registration, security guard card, hunting patch and 1958 shooting blue ribbon.

## Procedural History

The jury found Guirsch guilty of three counts of attempted first-degree murder, aggravated battery with a firearm, aggravated battery causing great bodily harm and armed violence. The state trial court merged the offenses into the two attempted first-degree murder counts and imposed two consecutive seventy-year terms of imprisonment. Petitioner appealed to the Illinois Appellate Court arguing that: (I) the trial court erroneously failed to instruct the jury on his affirmative defenses (self-defense and defense of dwelling) because evidence was presented that he reasonably feared the unidentified figures outside his home; (ii) the trial court erred in refusing to instruct the jury as to the crime of attempted second degree murder; (iii) he was denied his right to a fair trial by the State's improper use of evidence and argument about uncharged "other crimes" and "bad character;" (iv) the trial court erred in allowing hearsay testimony to be introduced by the prosecution; (v) the trial court improperly sentenced him to consecutive seventy-year terms; (vi) the prosecution failed to prove him guilty beyond a reasonable doubt; and (vii) his conviction should be overturned due

to the cumulative weight of the trial court's errors. *See* Exhibit B. Petitioner would raise substantially the same issues in each of his later state filings. The Appellate Court affirmed Petitioner's convictions, but vacated the consecutive seventy-year sentences. *See* Exhibit G. The Appellate Court remanded for resentencing because each of the seventy-year sentences exceeded the sixty-year maximum allowed under state law and the imposition of consecutive sentences violated the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.* Both parties petitioned the Illinois Supreme Court for leave to appeal. *See* Exhibits H and I. The Illinois Supreme Court denied the PLAs but vacated the Appellate Court's decision and remanded for reconsideration in light of its decision in *People v. Wagener*, 752 N.E.2d 430, 441 (Ill. 2001), which held that consecutive sentence generally do not violate *Apprendi*. *See* Exhibit J. The Illinois Appellate Court again affirmed Petitioner's convictions and remanded for resentencing. *See* Exhibit L. The remand was confusing, however. The Appellate Court's order stated both that it "vacate[d] the order requiring his sentences to run consecutively and order[ed] his new sentences to run concurrently," and that "[w]e affirm the defendant's convictions and the trial court's order of consecutive sentences but hold that the matter be remanded to the trial court for resentencing within the range set forth in [the applicable state statute]." *Id.* The trial court resentenced Petitioner to serve two consecutive fifty-year terms of imprisonment. *See* Exhibit O. Petitioner's conviction and sentence were affirmed on appeal, *see* Exhibit Q, and the Illinois Supreme Court denied his PLA on May 26, 2004, *see* Exhibit S. Petitioner did not file a state post-conviction petition. Petitioner filed his federal habeas petition on May 5, 2005.

## Discussion

Petitioner's § 2254 petition is governed by the provisions of the Antiterrorism and Effective

Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under AEDPA, a federal district court may issue a writ of habeas corpus when a prisoner is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has exhausted the state remedies as to each of his claims, thus, this Court may review the merits of his claims. *See* 28 U.S.C. § 2254(b)(1)(A). The scope of federal review of the merits of a petitioner's claims under § 2254 is narrow. A federal court shall not grant habeas corpus relief unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or the state court's determination of the facts was unreasonable in light of the evidence. 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "when the state court applies a rule that contradicts the governing law set forth by the Supreme Court or, on facts materially indistinguishable from the facts of an applicable Supreme Court precedent, reaches a different result." *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006) (internal citations omitted). Similarly, a state court decision unreasonably applies clearly established federal law when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 245 (7th Cir. 2003) (internal quotations omitted). A state court determination of the facts is unreasonable when it falls "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). In determining whether the decision was unreasonable, a federal court reviews the last state court decision with an explanation or written opinion. *See Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990) ("Unexplained affirmances or denials of discretionary review do not retract a state-law basis of decision already

given").

## I.    Unsigned Petition

The State argues that Guirsch's habeas petition should be dismissed because it was not timely filed. Section 2244(d)(1) provides a one-year period of limitation during which a person in custody pursuant to the judgment of a state court may apply for a federal writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). The one-year period of limitation begins running from the latest of several dates; applicable here is the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). The Illinois Supreme Court denied Guirsch's PLA on May 26, 2004, and he did not petition the United States Supreme Court for a writ of certiorari. Thus, his one-year limitations period began to run on August 26, 2004 – the date on which his right to file a petition for writ of certiorari in the United States Supreme Court expired. *See Anderson v. Litscher*, 281 F.3d 672, 674 (7th Cir. 2002) ("[W]e believe that the ninety day period during which a petition for certiorari may be filed by a state prisoner falls within the meaning of section 2244(d)(1)(A) for purposes of calculating when the statute of limitations begins to run"). Petitioner filed an unsigned § 2254 petition on May 5, 2005. Section 2242 of AEDPA and Rule 2(c)(5) of the Rules Governing § 2254 Cases require that a petition be signed. *See* 28 U.S.C. § 2242. Petitioner did not file a signed § 2254 petition until September 28, 2005, a date outside AEDPA's one-year time limit. The question is thus whether the later, signed petition relates back to the date on which Petitioner filed his unsigned petition.

Two Courts of Appeals have relied summarily on the United States Supreme Court decision in *Becker v. Montgomery*, 532 U.S. 757 (2001), to conclude that a signed petition relates back to the filing date of an unsigned petition. *See Birch v. Thompson*, 2007 WL 786790 (9th Cir. 2007); *De*

*Aza-Paez v. United States*, 343 F.3d 552, 553 (1st Cir. 2003). In *Becker*, the Supreme Court held

that the failure to sign a notice of appeal as required by Federal Rule of Civil Procedure 11(a) did

not deprive a court of jurisdiction so long as the party cured the defect as Rule 11(a) prescribes. *See*

*id.* at 65-66. The State argues that the decisions of the Courts of Appeals are wrong because Rule

2(c) does not have a provision similar to Rule 11(a) permitting a petitioner to cure. The applicable

§ 2254 Rules took effect on December 1, 2004. The Committee Notes to those Rules provide that:

> Current Rule 2(e), which provided for returning an insufficient
> petition, has been deleted. The Committee believed that the approach
> in Federal Rule of Civil Procedure 5(e) was more appropriate for
> dealing with petitions that do not conform to the form requirements
> of the rule. That Rule provides that the clerk may not refuse to accept
> a filing solely for the reason that it fails to comply with these rules or
> local rules. Prior to the adoption of a one-year statute of limitations
> in the Antiterrorism and Effective Death Penalty Act of 1996, 110
> Stat. 1214, the petitioner suffered no penalty, other than delay, if the
> petition was deemed insufficient. Now that a one-year statute of
> limitations applies to petitions filed under § 2254, *see* 28 U.S.C. §
> 2244(d)(1), the court's dismissal of a petition because it is not in
> proper form may pose a significant penalty for a petitioner, who may
> not be able to file another petition within the one-year limitation
> period. Now, under revised Rule 3(b), the clerk is required to file a
> petition, even though it may otherwise fail to comply with the
> provisions in revised Rule 2(c). The Committee believed that the
> better procedure was to accept the defective petition and require the
> petitioner to submit a corrected petition that conforms to Rule 2(c).

In light of the Committee's decision to delete Rule 2(e) and the Committee's expressed intent not

to penalize a petitioner for failing to technically comply with the provisions of Rule 2(c), a § 2254

habeas petition is filed for purposes of § 2244(d)(1)'s one-year period of limitation even though it

lacks the signature required by Rule 2(c)(5) and § 2242. Because Guirsch's failure to sign his

original petition seems to have been inadvertent, this Court finds his petition was timely filed on

May 5, 2005. *See Cox v. McBride*, 279 F.3d 492, 493 (7th Cir. 2002) (district court may dismiss

complaint if petitioner "is obdurate in refusing to sign").

## II. The Trial Court's Decision Not to Instruct the Jury on the Affirmative Defenses of Self-Defense and Defense of Dwelling[1]

A trial court's decision not to instruct the jury on an affirmative defense violates the Constitution when it deprives the defendant of his Fourteenth Amendment due process right to a fundamentally fair trial. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004); *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995). A due process violation occurs in the limited circumstances where the state court's error was so serious that it resulted in a fundamental miscarriage of justice – that is, when it is likely that an innocent person was convicted.[2] *Id.* at 510. Thus, to show a fundamental miscarriage of justice, Petitioner must demonstrate that had the omitted instructions been given, the jury more likely than not would have found him justified in using deadly force to defend himself and his dwelling. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (a petitioner asserting innocence must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt").

Under Illinois law, a defendant may raise a claim of self-defense when he presents evidence: "(1) that force had been threatened against defendant; (2) that defendant was not the aggressor; (3)

---

[1] The State states that "[b]ecause petitioner raised these claims with the state courts, exhaustion and fair presentation are not at issue." This Court can find no mention of a federal basis for Plaintiff's claims in his state filings. Nonetheless, because the State concedes the issue and because the claims fail on their merits, this Court will address them. *See Moore v. Casperson*, 345 F.3d 474, 494 (7th Cir. 2003) (proceeding to merits because state failed to argue, or even mention, procedural default issue).

[2] "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988), citing *Stevenson v. United States*, 162 U.S. 313 (1896). The heightened fundamental miscarriage of justice standard must be met, however, to establish a due process violation on habeas review. *See Perruquet*, 390 F.3d at 520 n.3.

that the danger of harm was imminent; (4) that the force threatened was unlawful; (5) that defendant actually believed that a danger existed, that the use of force was necessary to avert the danger, and that the kind and amount of force actually used was necessary; and (6) that defendant's beliefs were reasonable." *People v. Morgan*, 719 N.E.2d 681, 700 (Ill. 1999), citing *People v. Jeffries*, 646 N.E.2d 587, 598 (Ill. 1995). Force likely to cause death or great bodily harm,[3] in particular, may be justified "only if [the defendant] reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or the commission of a forcible felony." 720 ILCS 5/7-1. Deadly force may be used to defend a dwelling when entry is made or attempted in a violent, riotous, or tumultuous manner, and a person reasonably believes that the force is necessary to prevent an assault upon himself or another then in the dwelling or the commission of a felony in the dwelling. *See* 720 ILCS 5/7-2.

In arguing that the trial court should have given self-defense and defense of dwelling instructions, Petitioner points out that the police officers did not identify themselves when he opened the door and that some of the neighbors testified that they never heard the officers identify themselves while they were knocking. Petitioner also contends that the poor lighting outside his door and the officers' plain clothes meant that he could not identify them as police officers. Not knowing they were police officers, Petitioner argues that he reasonably feared the men were attempting entry when they pounded on his door and that being outnumbered by four younger men, one of them armed, his response was justified. Petitioner also suggests that he was not the aggressor because he remained in the doorway to his apartment throughout the confrontation. Finally,

---

[3] For reasons of simplicity, this Court generically refers to this amount of force as "deadly force" in this opinion.

Petitioner testified that his apartment window had been slit a couple of nights before the shooting, raising his fear of intruders.

The trial judge denied Petitioner's requested instructions because "[t]here's no imminent use of deadly force to Mr. Guirsch from the evidence that I heard," there was no harm threatened by the officers pounding on the door and Petitioner "only saw one holstered gun, and the guys were running away from him." Judging the evidence under the factors in *Morgan*, the Illinois Appellate Court determined that even if Petitioner did not know that the individuals at his door were police officers, the officers' actions did not justify the amount of force that Petitioner used or that Petitioner's belief that such force was necessary was a reasonable belief. As to the defense of dwelling instruction, the Appellate Court found that the fact that the police officers pounded on Guirsch's door was simply not sufficient evidence to show that his belief as to the need to use deadly force was reasonable.

Petitioner has not demonstrated that it is more likely than not that the jury would have found him justified in using deadly force to defend himself or his dwelling. *See Eaglin*, 57 F.3d at 501. To begin, the State introduced evidence to prove that Guirsch knew the men were police officers before he began firing. In his statement to police, Guirsch said that he heard the word "police" and static coming from the officers' radios while he walked through his front room towards the door. Guirsch testified at trial that although the lighting was poor, he could see the men wore vests and plaid shirts, an outfit that Guirsch admitted that he knew plain clothes' officers to wear. The officers testified that their badges, nametags and other police equipment were visible and one of them was dressed in his sergeant's uniform. But more important than whether Guirsch knew the men were police officers, a jury would not be more likely than not to find that the conduct of the men outside Guirsch's door created a reasonable apprehension of imminent deadly harm. Guirsch made no

attempt to ascertain the identity of the men outside his door or their purpose before or after opening the door. *See People v. Lavac*, 357 Ill. 554, 557, 192 N.E.2d 568 (Ill. 1934) (self-defense and defense of habitation instructions needed where officers did not identify themselves before firing through the door at a defendant that "made inquiry of the persons outside, and was told, in substance, to open the door or they would break in or shoot in"). As soon as Guirsch opened the door, with his gun in hand, the officers retreated from him. And while Guirsch never left his doorway, that does not mean he was not the aggressor. It was not until Guirsch fired the shot that struck Officer Mullen that the officers used or threatened to use any force.

As to the officers' actions that provoked his response, Guirsch cites only their aggressive pounding on his door and the fact that he noticed one of the officers was armed when he opened the door. Neither of these circumstances, alone or together, justified Petitioner's use of deadly force. This is not to say that an individual must always wait to be fired upon or attacked until he can defend himself.[4] *See People v. Evans*, 631 N.E.2d 281, 291 (Ill. App. 1994) ("[R]easonable judgment under the existing circumstances means that a [defendant's] right of self-defense arises before she is caused to spout blood"). Additionally, the Court recognizes that the language of the Illinois defense of dwelling statute does not require actual entry, only attempted entry. *See* 720 ILCS 5/7-2. Nonetheless, there must exist circumstances that would cause a reasonable person to believe that deadly force was necessary to prevent someone from inflicting imminent and serious harm, with or without a weapon. *See People v. Estes*, 469 N.E.2d 275, 283 (Ill. App. 1984). Petitioner does not

---

[4] This is not a case where the police officers created the dangerous situation by entering Guirsch's apartment. *See Sledd v. Lindsay*, 102 F.3d 282, 288 (7th Cir. 1996) ("The act of entering a private residence late at night with no indication of identity was enough to show that the officer had unreasonably created the encounter that led to the use of force.")

identify anything in the officer's actions that led him to believe that the officer intended to use his weapon against Guirsch, other than the fact that he possessed it. Without requiring such indicia of intent, a person would be entitled to use deadly force any time they saw an individual that was not readily-identifiable as a police officer carrying a gun. Also, Guirsch's neighbors testified that the knocking stopped some time before they heard the gunshots. With only these circumstances, combined with evidence that Guirsch should have known that the men were police officers, it is not more likely than not that a rationale jury would have found Petitioner's use of force reasonable or justified. *See Armstrong v. Bertrand*, 336 F.3d 620, 626 (7th Cir. 2003) (finding state court's rejection of self-defense instruction not unreasonable where evidence was insufficient). Accordingly, the trial court's decision not to instruct the jury on self-defense and defense of dwelling did not deprive Petitioner of due process.

## III.    The Trial Court's Failure to Instruct the Jury on Second Degree Attempted Murder

Illinois does not recognize the crime of attempted second degree murder. *See People v. Lopez*, 655 N.E.2d 864, 868 (Ill. 1995). In Illinois, an individual is guilty of second degree murder when he commits the offense of first degree murder, but certain mitigating circumstances are present. *See* 720 ILCS 5/9-2. One mitigating circumstance is that, at the time of the killing, the defendant believes the circumstances to be such that, if they existed, would justify the killing under a theory of self-defense or defense of dwelling, but his belief is unreasonable. *See id.* "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." *See* 720 ILCS 5/8-4(a). Reading these sections in conjunction, the Illinois Supreme Court held that attempted second degree murder would require that a person intend an unreasonable belief in the need to use deadly force –

an impossibility. *See Lopez*, 655 N.E.2d at 868. Accordingly, based on the wording of the attempt statute, the Illinois Supreme Court found that the legislature did not intend an offense of attempted second degree murder. *Id.*

The absence of an attempted second degree murder offense can create an anomalous situation when the defendant meets the mitigating factors in the second degree murder statute, but his victim survives. Since there is no attempted second degree murder, that defendant has no opportunity to prove its mitigating factors and thus is guilty of attempted first degree murder. Attempted first degree murder is a Class X felony punishable with a term of 6 to 30 years imprisonment. *See* 720 ILCS 5/8-4(c)(1); 720 ILCS 5/5-8-1(a)(3). The possible term of imprisonment for second degree murder ranges from 4 to 20 years. *See* 720 ILCS 5/5-8-1(a)(1.5). A defendant acting under mitigating circumstances is therefore subject to a greater sentence if the victim lives than if the victim dies.

When a person has been convicted of a crime, the court may impose any statutorily-authorized punishment unless that punishment is cruel and unusual or based upon an arbitrary classification in violation of due process and equal protection. *See Chapman v. U.S.*, 500 U.S. 453, 465 (1991). Petitioner claims that the State's failure to recognize the offense of attempted second degree murder creates an arbitrary and irrational classification. Petitioner argues that strict scrutiny should apply to the State's classification because it implicates his fundamental right to present a theory of defense. Although Petitioner may have a fundamental right to have the jury consider all relevant evidence in determining whether the State has proved him guilty beyond a reasonable doubt, the Supreme Court has not recognized a fundamental right to a jury instruction on self-defense or a lesser-included offense. *See Montana v. Egelhoff*, 518 U.S. 37, 56 (1996) (stating that

prior case could be read as "an assertion that the right to have a jury consider self-defense evidence (unlike the right to have a jury consider evidence of voluntary intoxication) is fundamental, a proposition that the historical record may support"); *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998) (refusing to extend the rule in *Beck v. Alabama*, 447 U.S. 625, 638 (1980), that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense where evidence supported such an instruction, to non-capital cases). Because Illinois' classification does not implicate a fundamental right or a suspect class, the rational-basis test applies. A State law comports with due process under that test, "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993); *see U.S. v. Lawrence*, 951 F.2d 751, 755 (7th Cir. 1991) (disparity in sentences for crack and cocaine rationally related to government purpose in combating the devastating effects of crack cocaine on our society).

The State contends that its legitimate purpose for not recognizing attempted second degree murder is that it is "an oxymoron" because, as the Illinois Supreme Court stated, "one cannot intend either a sudden and intense passion due to serious provocation or an unreasonable belief in the need to use deadly force." *Lopez*, 655 N.E.2d at 448.

Importantly, this is not a situation where the underlying offense has a level of intent different from the intent in the attempt statute. It may be incongruous, for example, to find a person guilty of attempt when the underlying offense required only recklessness or negligence. *See, e.g., People v. McDavis*, 97 A.D.2d 302, 303 (N.Y. App. 1983) ("[T]here can be no attempt to commit a crime that does not involve a specific intent, such as manslaughter in the second degree, a crime predicated upon a reckless act"); *but see Lemus-Rodriguez v. Ashcroft*, 350 F.3d 652, 653 (7th Cir. 2003)

(noting that petitioner had been convicted of attempted reckless discharge of a firearm, in violation of Illinois law, 720 ILCS 5/24-1.5, by firing a rifle into the air on New Year's Eve).

Subtantial deference is afforded a state's decision to punish criminals in the manner it sees fit, and the State's rational basis for not including an attempted second degree murder statute due to the inability to define a crime where one cannot intend either a sudden and intense passion due to serious provocation or an unreasonable belief in the need to use deadly force, is a reasonable drafting of the statute. *See Chapman*, 500 U.S. at 465; *Varner v. Monohan*, 460 F.3d 861, 865-66 (7th Cir. 2006) (finding a rational basis for State's differing civil-commitment standards for people who have been convicted of sex offenses). Whether the Illinois legislature could have drafted the statute better is not for this Court to review. The legislature chose to provide a sentencing range for each crime based upon the individual conduct of the defendant based upon an accurate definition of intent; the sentencing ranges for the two crimes overlap – resulting in the possibility that both classes of offenders can receive exactly the same sentence. The imposition of the sentence, therefore, can not be cruel and unusual nor can it be considered arbitrary.

Even if this Court were to entertain Petitioner's position regarding Illinois' sentencing scheme, this Court could not grant Petitioner habeas relief because the failure to include an instruction on attempted second degree murder did not result in a fundamental miscarriage of justice. *See Charlton v. Davis*, 439 F.3d 369, 375 (7th Cir. 2006). The fundamental miscarriage of justice standard requires Petitioner to show that it is more likely than not that no reasonable juror would have convicted him. *See Schlup*, 513 U.S. at 329. Applied to the context of the failure to instruct on a lesser included offense, Petitioner must not only establish that the state court should have given an attempted second degree murder instruction, but also that had instruction been given it more

likely than not that a reasonable jury would have convicted him of attempted second degree murder rather than attempted first degree murder. *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999); *Sloan v. Gramley*, 215 F.3d 1330, 2000 WL 536164, *5 (7th Cir. 2000) (petitioner must establish that "it is improbable that after considering all of the evidence a reasonable jury would have convicted him of murder rather than voluntary manslaughter").

In Illinois, an individual is guilty of second degree murder when he commits the offense of first degree murder and, at the time of the killing, he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under a theory of self-defense or defense of dwelling, but his belief is unreasonable. *See* 720 ILCS 5/9-2(a)(2). Petitioner bears a lesser burden in trying to prove the mitigating circumstance for attempted second degree murder than a claim of self-defense since he only must prove that he had a subjective belief that the circumstances justified his action, not a reasonable belief. The evidence from which a jury could infer Guirsch's subjective belief is the same evidence which may have supported his self-defense claim – his window had been slit several days before the shooting, the officers arguably did not identify themselves as police, the officers pounded loudly on his door and Guirsch opened the door to find four men, at least one of them possessing a gun, outside. Additionally, while the State introduced some evidence of Guirsch's frustration with the police, it offered no substantial motive for his shooting at the officers. On the other side of scale is the State's evidence that the officers announced themselves while knocking, Guirsch never tried to determine the identity of the individuals at his door before opening it, he gave a statement that he heard the word "police" before he opened the door, the officers' badges and equipment were displayed prominently and the officers did not act aggressively towards Guirsch, including retreating upon first seeing the gun. Based upon this evidence, a rational jury

could find that Petitioner honestly believed, however unreasonably, the circumstances to be such that his use of deadly force was necessary to prevent imminent death or great bodily harm to himself or another or the commission of a forcible felony. The same rational jury, however, would not be more likely than not to make that same finding.[5] Because it is not more likely than not that a reasonable jury would have acquitted Petitioner of the greater offense of attempted first degree murder in favor of a conviction for of attempted second degree murder, Petitioner was not denied due process. *See* 720 ILCS 5/7-1; 720 ILCS 5/7-2.

## IV.    Improper Introduction of Evidence

Petitioner asserts that the introduction of evidence that two gunshots were fired from his apartment window earlier in the night, the prosecution's comments about the hunting equipment found in his apartment and about him being a trained marksman and the fact that the prosecution knew one of its witnesses, Ronald Satchell, lied on the stand when he described the gunshots deprived him of a fair trial. A state trial court's evidentiary rulings and the admission of evidence are reviewable only to the extent that they deprived a petitioner of his due process right to a fair trial. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) ("In order to claim a right to relief,

---

[5] Like this Court's review of the decision not to instruct on self-defense and defense of dwelling, review of a trial court's decision not to instruct on a lesser included offense is limited in a habeas proceeding. *Compare Keeble v. U.S.*, 412 U.S. 205, 208 (1973) ("[I]t is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater") *with Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001) (petitioner's burden is "especially heavy" to show that omitted instruction violated due process); *Taylor v. Gilmore*, 954 F.2d 441, 451 (7th Cir. 1992) ("A miscarriage occurs if *credible* evidence in the record would support a verdict based on [the lesser included] instruction"); *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 402 (7th Cir. 1979) ("At a minimum, petitioner must show that there was 'unequivocally strong' evidence in the record by which a jury could have found each element of the proposed instruction, and that the other evidence does not disqualify him from using the proposed defense.")

a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted"); *Pierson v. O'Leary*, 959 F.2d 1385, 1389 (7th Cir. 1992) ("On habeas review of a state conviction, we consider only whether the admission of the evidence caused a violation of the defendant's federal constitutional rights"). The introduction of the earlier gunshots and Satchell's testimony regarding them were not improper. Although the prosecution's comments about Petitioner's hunting background arguably were irrelevant and prejudicial, their admission did not deny Petitioner a fundamentally fair trial.

Ronald Satchell, who lived down the street from Guirsch, testified that he told police that he saw two shots fired from a gun pointed out a second floor window. Petitioner complains that the State improperly introduced this evidence of other crimes against him. The State argues that the evidence related to the gunshots was necessary to explain why the police officers came to Guirsch's apartment. This Court agrees that the officers' presence at Guirsch's door needed to be explained to the jury. See United States v. Marks, 816 F.2d 1207, 1209-10 (7th Cir. 1987) (evidence of prior bad acts essential to the jury's understanding of the background of the case). In a related challenge, Petitioner argues that the State knew that Satchell's testimony was a lie since the window he identified would not fully open. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) ("The most rudimentary of the access-to-evidence cases impose upon the prosecution a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath"). The only evidence that Satchell "lied" came from Petitioner and a Public Defender investigator who examined the window well after the incident; each testified that the window did not open fully. The conflicting testimony, even if true and the shots therefore did not come from Guirsch's window,

does not mean that Satchell lied or that the prosecution knew about it. Accordingly, Satchell's testimony did not render Petitioner's trial fundamentally unfair.

During the trial and in closing argument, the prosecution argued that Guirsch was a "seasoned hunter," "trained marksman," "sniper," "hand grenade in a baby carriage," and that the officers were his "prey" and a hunting "prize" or "trophy." The Illinois Appellate Court held that "[a]lthough the State chose to portray the defendant in a harsh and callous manner, we conclude that in light of the defendant's own testimony, the State did not overstep its boundaries in characterizing the defendant as a trained marksman and skilled hunter." While the statements seem unnecessarily vitriolic, they were not so prejudicial as to cause a jury to convict an otherwise innocent person. *See Perruquet*, 390 F.3d at 510-11 ("Due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process"). In the end, none of the trial court's evidentiary rulings, alone or cumulatively, deprived Petitioner of his due process right to a fundamentally fair trial. *See U.S. v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005) ("[Trial] court errors must be considered in the aggregate on appeal; while individual errors might be considered harmless, there are some cases in which the cumulative harm done is no longer insignificant."); *U.S. v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000) ("But in assessing whether a conviction should be upheld despite the presence of error, a court is required to assess the harm done by the errors considered in the aggregate").

V.      **Sentencing Issues**

Petitioner challenges his sentence on three grounds: first, the trial court extended his sentence using an enhancement that applies only if the victim is murdered; second, the consecutive terms

were based upon facts not proved beyond a reasonable doubt to a jury; and third, the trial court increased his term of imprisonment using the elements of the crime. Petitioner's first and third claims based strictly on state law are not grounds for relief under § 2254. As to Petitioner's second claim, his consecutive sentences do not violate *Apprendi* because his total term of imprisonment does not exceed the combined statutory maximum for all counts on which he was convicted.

Petitioner argues that because Officer Mullen did not die, the state court wrongly extended his sentence based upon an enhancement that applies when the "*murdered* individual" is a peace officer. The sentence for attempt to commit first degree murder, unlike attempt to commit other Class X felonies, is the sentence for a Class X felony – 6 to 30 years. *See* 720 ILCS 5/8-4(c)(2). Other attempts to commit Class X felonies are punished as Class 1 felonies. *Id.* A Class 1 felony, other than second degree murder, carries a punishment of 4 to 15 years in prison. *See* 720 ILCS 5/8-1(a)(4). The attempt statute applicable at the time of Petitioner's crime called for an enhanced sentence of twenty to sixty years when the person attempted to commit first degree murder and "knew or should have known that the murdered individual was a peace officer." *See* 720 ILCS 5/8-4(c)(1)(A); 720 ILCS 5/9-1(b)(1). Consistent with the Illinois legislature's intent, if not their words, the Illinois Appellate Court found that the enhancement applied. A claim for relief in a petition for writ of habeas corpus under § 2254 must seek to vindicate a right protected under the laws, treaties or Constitution of the United States – it is not the role of a federal court to review state court decisions on state law issues. *See Estelle*, 502 U.S. at 67-68. Petitioner does not challenge his sentence as a violation of federal law.[6] If the Illinois courts incorrectly interpreted the "murdered

---

[6] Petitioner's enhanced sentence violates *Apprendi* because the question of whether Petitioner knew or should have known that the persons at his door were peace officers increased the penalty for his crime beyond the prescribed statutory maximum and was not submitted to a jury and proved

individual" enhancement, this Court cannot correct that error on habeas. Similarly, on Petitioner's third sentencing claim, the trial court may have violated Illinois law by using the elements of the offense as factors in determining Petitioner's sentence, but no federal right was violated because the trial court sentenced Petitioner within the statutory range of twenty to sixty years and the punishment is neither cruel and unusual nor is it based upon an arbitrary classification. *See Chapman*, 500 U.S. at 465.

Last, Petitioner asserts that his consecutive sentences violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[7] A decision to sentence a defendant to consecutive sentences for separate offenses, where all offenses have been submitted properly to the jury, does not violate the *Apprendi* rule unless the combined sentence exceeds the combined statutory maximum for all counts on which the defendant has been convicted. *See United States v. Noble*, 299 F.3d 907, 909-10 (7th Cir. 2002). The jury found Guirsch guilty of three counts of attempted first-degree murder, aggravated battery with a firearm, aggravated battery causing great bodily harm and armed violence. Petitioner was eligible for terms of twenty to sixty years on each of the attempted first degree murder counts.

---

beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 489 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). If Petitioner had raised a federal claim, the critical question would have been whether the evidence was "so strong as to leave no doubt as to what the jury's finding on the subject would have been." *U.S. v. Mansoori*, 480 F.3d 514, 523 (7th Cir. 2007); *see United States v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000) ("Whether or not we are applying the stringent plain error screen, the *Apprendi* error . . . requires us to ask whether it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty beyond a reasonable doubt'"), quoting *Neder v. United States*, 527 U.S. 1, 18 (1999).

[7] Petitioner's conviction became final on September 15, 2004 – 90 days after June 17, 2004, the date on which the Illinois Supreme Court denied his petition for leave to appeal. *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). *Apprendi* therefore was applicable at the time of Petitioner's direct appeal. *See Curtis v. United States,* 294 F.3d 841, 844 (7th Cir. 2002) ("*Apprendi* . . . does not disturb sentences that became final before June 26, 2000, the date of its release").

Therefore, his sentences of fifty years each of the two counts of attempted first degree murder do not violate *Apprendi*.

### Conclusion and Order

Under the Rules Governing § 2254 Cases and 28 U.S.C. § 2244(d)(1), Guirsch timely filed his petition on May 5, 2005 even though it was not signed. The state court's failure to instruct the jury on self-defense, defense of dwelling or attempted second degree murder did not violate Petitioner's due process rights because it is not more likely than not that a reasonable jury would have found him not guilty of attempted first degree murder. Finally, neither the state court's evidentiary rulings nor its sentencing of Petitioner violated his rights under the Constitution or laws of the United States. Wherefore, Guirsch's petition for writ of habeas corpus is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 20, 2007